```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2

3    --------------------------------X
                                      :
4    ABBEY PHOTOGRAPHY, INC.,         :
                                      :  19-CV-02214 (RRM)
5                  Plaintiff,         :
                                      :
6            v.                       :
                                      :  August 28, 2019
7    ADVANCE PUBLICATIONS, INC.,      :  Brooklyn, New York
                                      :
8                  Defendant.         :
                                      :
9    --------------------------------X

10
            TRANSCRIPT OF CIVIL CAUSE FOR INITIAL CONFERENCE
11               BEFORE THE HONORABLE JAMES ORENSTEIN
                    UNITED STATES MAGISTRATE JUDGE
12

13   APPEARANCES:

14
     For the Plaintiff:         JAMES H. FREEMAN, ESQ.
15                              Liebowitz Law Firm
                                11 Sunrise Plaza
16                              Valley Stream, New York 11580
                                Brooklyn, New York 11201
17

18
     For the Defendant:         JUSTIN QUINN, ESQ.
19                              Robinson Miller
                                110 Edison Place
20                              Newark, New Jersey 07102

21

22   Court Transcriber:         SHARI RIEMER, CET-805
                                TypeWrite Word Processing Service
23                              211 N. Milton Road
                                Saratoga Springs, New York 12866
24

25



     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

2

1  (Proceedings began at 10:33 a.m.)
2         THE CLERK: Civil Cause for Initial Conference, <u>Abbey</u>
3  <u>Photography, Inc. v. Advance Publications, Inc.</u>, Docket No.
4  19-CV-2214.
5         Will the parties please state their appearances for
6  the record starting with the plaintiff?
7         MR. FREEMAN: Good morning, Your Honor. James
8  Freeman, Liebowitz Law Firm on behalf of the plaintiff, Abbey
9  Photography, Inc.
10        THE COURT: Good morning. Mr. Freeman, do I have
11 you on the docket?
12        MR. FREEMAN: Yes, Your Honor, I made a notice of
13 appearance this morning.
14        THE COURT: Okay. Your appearance.
15        MR. QUINN: Good morning, Your Honor. Justin Quinn
16 for Advance Publications, Inc., and with me is Steven Gaynor
17 with Advance Legal.
18        THE COURT: Good morning. Mr. -- I'm sorry, Gaynor?
19        MR. QUINN: Gaynor, yes.
20        THE COURT: Please spell it.
21        MR. QUINN: G-A-Y-N-O-R.
22        THE COURT: And Steven with a V or a P-H?
23        MR. QUINN: With a V.
24        THE COURT: Welcome. Have a seat, please. All
25 right, folks. So, Mr. Freeman, I've read the complaint. It's

3

1  like many others you guys have filed here.  Anything out of
2  the ordinary on this one from your perspective?
3              MR. FREEMAN:  Not particularly, Your Honor.  It does
4  appear to be somewhat of a garden variety copyright
5  infringement case.
6              THE COURT:  Okay.  Have a seat.  Make yourself
7  comfortable.
8              The allegedly infringing photograph that you have in
9  Exhibit B it has in a gutter the name Vicky Hyman I think.
10             MR. FREEMAN:  Yes, I saw that.
11             THE COURT:  Do you know who that is?
12             MR. FREEMAN:  I honestly don't, Your Honor.  I think
13 the defendants might be able to answer that.
14             THE COURT:  Okay.  Because the plaintiff is
15 identified as the author and that's a corporation.  So I just
16 don't know -- didn't know if Hyman was the person who actually
17 took the picture or not.
18             MR. FREEMAN:  Oh, no, actually not.
19             THE COURT:  Before I turn to your colleagues, you
20 have expert discovery anticipated.
21             MR. FREEMAN:  We don't anticipate expert discovery.
22             THE COURT:  Yes, you do.  You put it in your
23 discovery plan.
24             MR. FREEMAN:  I suppose we can put it into our
25 discovery plan but --

4

1      THE COURT:  No, no, you shouldn't if you don't
2 actually intend to do it but I do hope in the future, and this
3 is for both sides, that if you submit a discovery plan you'll
4 actually have read it and given it some thought before you
5 come into the courtroom.  I'd rather not be the first person
6 to look at it.  Understood?
7      MR. FREEMAN:  Understood, Your Honor.
8      THE COURT:  Okay.  Good.  Then neither one of you is
9 anticipating any expert testimony; correct?
10      MR. QUINN:  We are, Your Honor.
11      THE COURT:  You are?
12      MR. QUINN:  I'm a little surprised that that was the
13 comment that was just made.  So I think based on our
14 initial -- I'm sorry.  Based on our initial conversation
15 before coming in on the meet and confer, I think we both
16 anticipated perhaps doing a valuation expert for the photo.
17      THE COURT:  Really?  You're going to spend money --
18 let me ask you.  How much would it cost to settle this thing?
19      MR. QUINN:  So actually, Your Honor, if I may.  I
20 think that's a great question.  So our hope I think is that we
21 could come to Your Honor relatively quickly for a settlement
22 conference.  We've exchanged an offer of judgment that we
23 believe is at least five times more than the --
24      THE COURT:  Offer of judgment?
25      MR. QUINN:  Yes, sir.

5

```
 1              THE COURT:  What is the offer of judgment?
 2              MR. QUINN:  I'm sorry, Your Honor.  It is $2,500.
 3              THE COURT:  Okay.
 4              MR. QUINN:  The photo at issue here does not have
 5   license history or at least that's what I was told and that's
 6   our understanding but we do have a similar photo involving a
 7   New Jersey housewife with license history of $175.  So with
 8   that plus any profits that were derived as a result of the
 9   infringement the total actual damages here to the extent
10   plaintiff prevailed would be perhaps less than the complaint.
11              THE COURT:  Has the photo been licensed before?
12              MR. FREEMAN:  I don't believe so, Your Honor.
13              THE COURT:  Okay.  Do you have a standard fee for
14   licensing it?
15              MR. FREEMAN:  It could be somewhere between 500 up
16   to 1,500 depending on the negotiations between the parties and
17   depending on the use.
18              THE COURT:  I originally had a case with you guys
19   for a licensing fee and you gave me a range that it had been
20   licensed and I recommended damages for that licensing fee but
21   that was $250.  So if it doesn't have a history here -- well,
22   I'm not going to ask you to do it because -- do you want to
23   have an early settlement conference?
24              MR. FREEMAN:  Sure.  We'd be amenable to a
25   settlement conference.
```

6

1        THE COURT:  Let's have a date for that, please.
2                  [Pause in proceedings.]
3        THE COURT:  I have a way of doing it I think.  So
4   we're -- just so you guys know what's meaningful looks are
5   about we are switching calendar and email systems today and
6   that's causing some headaches about accessing the information
7   but I can still figure it out.
8        Any information that you guys need to exchange
9   before we can sit down to talk settlement?  That will affect
10  when we do it.
11       MR. QUINN:  So I'm sure what plaintiff would want is
12  the number of page views plus the add revenue.  So we can of
13  course turn that over.
14       THE COURT:  Okay.  How long do you need to do that
15  before we get together?
16       MR. QUINN:  We can do it I think by the end of next
17  -- I'm sorry, the end of this week, the beginning of next
18  week.
19       THE COURT:  If we do something in like two, three
20  weeks we're good?
21       MR. QUINN:  Sure.  Yes, Your Honor.
22       THE COURT:  It may actually be a little longer than
23  that because of my schedule.
24       MR. FREEMAN:  Your Honor, respectfully, if we can do
25  something in like the third -- or a week of September that

1  would be appreciative just because we have a very heavy motion
2  practice in the appellate docket for the first two weeks in
3  September.
4          THE COURT:  September 25th at two p.m. if that's
5  okay with everybody.
6          MR. QUINN:  Just one quick comment, Your Honor.  If
7  the photo has ever been licensed before it was my
8  understanding coming in that it was no but if it has if you
9  could just get us that information that would be helpful.
10         THE COURT:  Look, I'm going to rely on you guys to
11 keep each other up to date about what you think is needed in
12 terms of informal discovery before we have a settlement
13 conference.
14         MR. FREEMAN:  And also, Your Honor, could we have
15 the plaintiff participate or be available via telephone or do
16 you require that they be present physically?
17         THE COURT:  My standard practice is I let the
18 lawyers make their judgment call about whether being in the
19 room or immediately available by telephone is most useful.
20 I've had some kinds of cases where I've learned through
21 experience that we're better off with the client.  I'm not
22 there yet with these photography cases.  I may get there.
23         MR. FREEMAN:  Fair enough.
24         THE COURT:  But let's see how it goes.  But you --
25 what I don't want to have happen on either side is hear from

8

1   the lawyer can't take the next step because I can't reach my
2   client.  As long as that doesn't happen I'm good.
3            MR. FREEMAN:  Okay.  I think we're okay on that.
4   Thank you, Your Honor.
5            THE COURT:  All right.  Just to close the circle on
6   expert testimony, you're not anticipating a valuation expert
7   but you are.
8            MR. QUINN:  I'm hoping that we resolve the case and
9   we don't have to.
10           THE COURT:  But if you don't resolve the case.
11           MR. QUINN:  Reserving the right yes, Your Honor.
12           THE COURT:  Should we put it into a schedule?  Look,
13  this is a case where the cost of doing an expert might really
14  swallow the cost of everything else I see with the case.  If
15  you're planning to do it anyway I'll build it into the
16  schedule but the question I would have is would it be
17  something that we could do as fact discovery proceeds or would
18  it have to wait?
19           MR. QUINN:  I think we could do it as fact discovery
20  proceeds and then to the extent we need it I would just ask
21  Your Honor if I could submit a letter.
22           THE COURT:  I don't need to know -- if you can do it
23  during the fact discovery period if you're going to do it then
24  you don't need anything from me.  Go ahead and disclose the
25  report if you want and the same on your side.  I just want to

9

1   figure out how long the discovery period should be.  It sounds
2   like you don't need to add on an extra period past the end of
3   the year for expert discovery.
4           MR. QUINN:  Agreed, Your Honor.
5           THE COURT:  So your plan looked otherwise -- I'll
6   modify it that way.
7           MR. QUINN:  I have another question, Your Honor.
8           THE COURT:  Yes.
9           MR. QUINN:  Given the September 25th conference,
10  would there be -- would the Court be amenable to have --
11  abstaining from formal discovery until we have a conference?
12          THE COURT:  It's okay with me if it's okay with all
13  of you.
14          MR. FREEMAN:  That's fine.
15          THE COURT:  Okay.  Here's what I'll do.  I'm going
16  to take your dates that were anticipating starting the
17  discovery period today put them all back a month so that we
18  have that pause and if the case doesn't settle you don't need
19  to get a separate order.  You just have the schedule in place.
20          MR. QUINN:  Thank you, Your Honor.
21          THE COURT:  Mr. Quinn, I haven't turned to you for
22  case specific issues but I have the plaintiff's story.
23  Anything other than -- well, tell me what's with your side of
24  the case.
25          MR. QUINN:  So it's our understanding that the photo

10

1 may have been -- we may have had permission to use the photo
2 from Bravo.  We still have to investigate that.  We probably
3 need a subpoena to send to Bravo.
4          THE COURT:  Got it.
5          MR. QUINN:  So that would be the issue that we would
6 need to run down during discovery.
7          THE COURT:  Do you know who this person is who's in
8 the gutter?
9          MR. QUINN:  Yes, Your Honor.  Vicky Hyman was
10 previously employed with Advance.  So she was the reporter.
11          THE COURT:  I see.  Okay.  Got it.  So I'll see you
12 next on September 25th at 2:00 for a settlement.  I'll have an
13 instruction about getting me your settlement positions in
14 advance in my order.
15          Anything else for today?
16          MR. QUINN:  Judge, just two comments.
17          THE COURT:  Yes.
18          MR. QUINN:  On the complaint -- can I hand Your
19 Honor something?
20          THE COURT:  What is it you want to tell me about?
21          MR. QUINN:  Sorry.  So there is -- you had mentioned
22 a point earlier about the gutter credit --
23          THE COURT:  Yes.
24          MR. QUINN:  -- and it being Vicky Hyman and you
25 noted Abbey Photography is the plaintiff here.  So there's a

11

1  parallel case in which the Liebowitz law firm is pursuing
2  default proceedings against -- about the same photo in the
3  Southern District.
4           THE COURT:  Uh-huh.
5           MR. QUINN:  That case is titled <u>Neil Clipper v.</u>
6  <u>Wetpaint.com</u>.  So the difference there is the name of the
7  plaintiff and in that case the quote --
8           THE COURT:  Author?
9           MR. QUINN:  The author in that case -- and this is
10 from the complaint, Paragraph 8.  Clipper is the author of the
11 photograph and has at all times been the sole owner of all
12 right, title and interest into the photograph including the
13 copyright.
14          THE COURT:  And that's by the same plaintiff's
15 counsel.
16          MR. QUINN:  Yes.  So the --
17          THE COURT:  Let's ask.  What do you say about that?
18          MR. FREEMAN:  Well, I mean Neil Clipper is the
19 photographer.  The copyright registration at issue lists the
20 copyright claimant as Abbey Photography, Inc.
21          THE COURT:  But Mr. --
22          MR. FREEMAN:  I don't have direct knowledge of that
23 very case.
24          THE COURT:  Who else knows what went into your
25 complaints if not you?  Your firm has said irreconcilable

12

1  things in two submissions to the Court.  How do you explain
2  that?  They can't both be true.  Is that right?
3              MR. FREEMAN:  I don't believe so.  I don't have
4  direct knowledge of that case.
5              THE COURT:  Send me a letter by Friday, please,
6  explaining how you've come to assert consistent with Rule 11
7  something in this case that contradicts something that you
8  asserted to the Southern District.
9              MR. FREEMAN:  Okay.
10             THE COURT:  Could you just give me the --
11             MR. QUINN:  Sure, Your Honor.  I have a copy if it's
12 easier.
13             THE COURT:  Okay.
14             MR. QUINN:  The only other item is the registration
15 number.  So I had emails with Mr. Freeman's colleague, Richard
16 Leibowitz, about this and it's Paragraphs 8 and 9.
17             THE COURT:  Give me a second.
18             MR. QUINN:  Sure.
19                    [Pause in proceedings.]
20             THE COURT:  Yes, go ahead.
21             MR. QUINN:  So in Paragraph 9 in both complaints
22 this -- if you contrast them there's a different registration
23 number.
24             THE COURT:  Okay.
25             MR. QUINN:  This is something that I think can be

```
                                                                  13
 1   easily amended but nonetheless --
 2             THE COURT:  I guess the question is why is the
 3   same --
 4             MR. QUINN:  That's right.  So we --
 5             THE COURT:  Excuse me.
 6             MR. QUINN:  Sorry.
 7             THE COURT:  The question I would want to understand
 8   better is it's not obvious to me that a photograph can't have
 9   two registrations.  Perhaps it can, I don't know, but assuming
10   that it normally wouldn't part of the letter that I'll get on
11   Friday will explain that discrepancy as well.
12             MR. FREEMAN:  Yes, Your Honor.
13             THE COURT:  Okay.
14             MR. QUINN:  Judge, if I may, just one fine point on
15   that.
16             THE COURT:  Yes.
17             MR. QUINN:  We had someone go to the United States
18   Copyright Office to get the copy of the deposit relating to
19   that specific registration number.  The photograph is not in
20   there.
21             THE COURT:  Which one?
22             MR. QUINN:  I'm sorry.  The one --
23             THE COURT:  The one in this case or in Clipper?
24             MR. QUINN:  The one in this case, Your Honor.
25             THE COURT:  Okay.
```

14

1    MR. FREEMAN: I want to clarify that. The copyright
2 registration number that was pled in the initial complaint is
3 incorrect. There was a typographical error.
4    THE COURT: Because it was used in a different
5 complaint?
6    MR. FREEMAN: That I don't know.
7    THE COURT: Well, check because --
8    MR. FREEMAN: We will check. We can send a letter.
9    THE COURT: Because one of the dangers when a firm
10 keeps asserting the same claim using boilerplate language case
11 after case after case is that they stop worrying about
12 compliance with the applicable rules and just copy and paste.
13 There's a point at which that's something that should have --
14 should trigger some remedial action other than oops, we said
15 something that was false that we could easily have checked and
16 didn't, we'll file an amended complaint. At some point there
17 are remedies beyond allowing you to file an amended complaint.
18    MR. FREEMAN: Understood, Your Honor.
19    THE COURT: I hope it is. I'll see you on the 25th.
20 Have a good day everybody.
21 (Proceedings concluded at 10:47 a.m.)
22                    * * * * *
23
24
25

```
                                                                    15
  1      I certify that the foregoing is a court transcript from
  2   an electronic sound recording of the proceedings in the above-
  3   entitled matter.
  4
  5                                    _____
  6                                        Shari Riemer, CET-805
  7   Dated:  September 10, 2019
```